```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - X

STEVEN FRISONE and DAVID ROBERTS,        :
                                             03 Civ. 8977 (WCC)
                    Plaintiffs,          :

       - against -                       :    **OPINION
                                              AND ORDER**

PEPSICO, INC. and SOUTH BEACH BEVERAGE   :
COMPANY, INC.,
                                         :
                    Defendants.
                                         :
- - - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

        LAW OFFICES OF TIMOTHY G. GRIFFIN
**Attorneys for Plaintiffs**
77 Pondfield Road
P.O. Box 156
Bronxville, New York 10708

TIMOTHY G. GRIFFIN, ESQ.

    Of Counsel

        PAUL, HASTINGS, JANOFSKY & WALKER
         LLP
**Attorneys for Defendants**
1055 Washington Boulevard
Stamford, Connecticut 06901

KENNETH W. GAGE, ESQ.
RAY A. WYNTER, ESQ.

    Of Counsel

*Copies Mailed to Counsel of Record*

**CONNER, Senior D.J.:**

Plaintiffs Steven Frisone and David Roberts commenced this action against defendants Pepsico, Inc. ("Pepsico") and South Beach Beverage Company, Inc. ("SoBe"), (collectively, the "defendants") alleging: (1) fraud; (2) fraudulent inducement; (3) breach of contract; and (4) breach of a covenant of good faith and fair dealing. Plaintiffs also request an accounting. Plaintiffs assert that this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. Defendants now move pursuant to FED. R. CIV. P. 12(b)(1) to dismiss the Complaint for lack of subject matter jurisdiction and, alternatively, pursuant to FED. R. CIV. P. 56 for summary judgment. For the reasons stated hereinafter, defendants' motion to dismiss is granted.

## BACKGROUND

**I.  Undisputed Factual Information**

Plaintiffs Steven Frisone and David Roberts are residents of Connecticut and were residents of Connecticut at the time this action was commenced. (Defs. Rule 56.1 Stmt. ¶ 1.) SoBe is a Delaware corporation with an office in Norwalk, Connecticut, both currently and at the time this action was commenced. (*Id*. ¶ 2.) Pepsico is a corporation with a principal place of business in New York. (Complt. ¶ 3.)

On or about January 5, 2001, Pepsico purchased the assets of South Beach Beverage Company, LLC and formed defendant SoBe. (Defs. Rule 56.1 Stmt. ¶ 8.) Frisone and Roberts were employed by SoBe at all times relevant to this action as Treasurer and Controller, respectively. (*Id*. ¶ 9.) Neither plaintiff had any ownership interest in SoBe. (*Id*. ¶ 10.) Plaintiffs worked for Janet

1

Banker, the Chief Financial Officer of SoBe from January of 2001 to September of 2003. (*Id.*) In approximately April of 2001, Banker met with plaintiffs individually to discuss the SoBe Long-Term Incentive Plan ("SoBe LTIP"). (*Id.* ¶ 11.) Banker used a nine-page written presentation to explain the SoBe LTIP and copies of this presentation were given to plaintiffs. (*Id.* ¶ 12.)

The SoBe LTIP had a three-year vesting period and a payout based on the appreciation of the value of SoBe at the end of the three years. (*Id.* ¶ 14.) Under the SoBe LTIP, certain key employees were awarded Stock Appreciation Rights ("SARs") which were calculated based upon a multiplier of their salary in 2001. (*Id.* ¶ 17.) The SoBe LTIP set forth the specific formula that would be used to measure the appreciation of the value of SoBe, which would then be used to calculate the payments made to eligible employees based upon their SARs award. (*Id.* ¶ 18.) The SoBe LTIP provided that the voluntary or involuntary termination of employment prior to the end of the three-year period would result in the forfeiture of all SARs. (*Id.* ¶ 19.)

On approximately March 19, 2002, Banker informed Frisone that his position at SoBe may be eliminated, but that she would try to find him a position within the Pepsico organization. (*Id.* ¶ 20.) In approximately April of 2002, Frisone's job responsibilities were reduced because a major portion of the accounts receivable function was taken over by Pepsi Bottling Group Shared Services. (*Id.* ¶ 21.) In July 2002, Frisone voluntarily left his employment with SoBe to accept a position with another company. (*Id.* ¶ 22.)

In approximately October 2002, Roberts was offered and accepted a position as Group Manager, Co-Pack Accounting at Pepsi-Cola North America ("PCNA"). (*Id.* ¶ 23.) Regarding Roberts's SARs award, the SoBe LTIP provided that any potential payment would be pro-rated because of his transfer to PCNA. (*Id.* ¶ 24.) On June 6, 2003, Roberts resigned from his

employment with PCNA to accept a position with Honeywell. (*Id*. ¶¶ 26, 27.)

Pursuant to the terms of the SoBe LTIP, in approximately February of 2004, three years after the formation of SoBe, participants that were still working for SoBe, PCNA or Pepsico received payments representing the increases in value of their SARs during that three-year period. (*Id*. ¶ 28.) According to the formula set forth in the SoBe LTIP, the net gain in the value of SoBe at the end of the three years was approximately $970.00 per SAR. (*Id*. ¶ 29.) Plaintiffs did not receive any payments under the SoBe LTIP because they were not employed at that time by SoBe, PCNA or Pepsico. (*Id*. ¶ 30.) If Frisone and Roberts had remained employed by either SoBe, PCNA or Pepsico in February of 2004 they may have received payments no greater than $37,000 and $32,000, respectively. (*Id*. ¶ 31.) Plaintiffs admit that they do not believe anyone at SoBe intentionally made statements that were known to be false when made. (*Id.* ¶ 32.)

## II. The Parties' Factual Allegations

### A. Jurisdiction

#### 1. Defendants' Factual Allegations

Defendants maintain that SoBe's executive management have always worked in the Norwalk, Connecticut office and continue to do so today. (Defs. Rule 56.1 Stmt. ¶ 3.) Defendants also maintain that SoBe's marketing efforts, product development, public relations and general business operations are conducted primarily out of the Norwalk offices. (*Id.* ¶ 3, 4.) According to defendants, at the time this action was commenced, approximately seventy-five percent of SoBe's employees worked in the Norwalk office, including, *inter alia*, most of the senior employees, such as marketing managers, sales managers, a brand director, the senior operations manager and the national quality

manager. (*Id*. ¶ 5.) Defendants maintain that as of the end of 2003, any SoBe employees working outside of the Norwalk office were located "in multiple states across the country," and the only two employees who worked in New York at that time were "lower level employees," a sales analyst and a merchandiser. (*Id*.)

Defendants maintain that the Norwalk office is SoBe's principal point of contact for dealing with the public. (*Id*. ¶ 6.) For example, defendants maintain that: (1) SoBe's website directs inquiries regarding employment and sponsorship opportunities to the Norwalk office; and (2) press releases regarding SoBe's business developments and sponsorships are issued from the Norwalk office. (*Id*.)

### 2. Plaintiffs' Factual Allegations

According to plaintiffs, following the acquisition of SoBe by Pepsico many of SoBe's business functions were taken over by Pepsico. (Pls. Rule 56.1 Stmt., Defs. Stmts. Denied ¶ 3.) Plaintiffs assert that the following activities all take place outside of the Norwalk, Connecticut office: (1) the functions of sales, operations, customer service, finance, tax, quality control, legal, human resources, accounts management, MIS and executive were transferred to Pepsico's New York locations; (2) the credit and collection function was transferred to Pepsico's North Carolina location; (3) portions of the finance function were transferred to Pepsico's Arizona location; (4) all customer calls for product orders were placed to Pepsico's New York locations; (5) all internet orders for products were received by Pepsico's New York location; (5) all copackers[1], which are located

---

[1] According to plaintiffs, "copackers" are non-Pepsico entities that bottle and ship Pepsi products to third parties with the consent and authorization of Pepsico and SoBe. (*Id*., n.1.)

4

throughout the United States and Canada, are selected by operational management in Pepsico's New York locations; (6) all functions related to copackers are performed by Pepsico management out of the New York locations; (7) all of the purchasing of SoBe ingredients is performed by Pepsico out of the New York locations; (8) most of the quality control functions are performed by Pepsico employees; (9) all information systems are run by Pepsico employees out of the New York locations; (10) control of the management operations of SoBe was controlled by Pepsico management in New York; (11) only recruiting agencies selected by Pepsico's Human Resource department could recruit job candidates; (12) SoBe press releases are published to the Pepsico corporate website; (13) all benefits administration, risk management function and payroll processing were performed by Pepsico employees out of the New York locations; and (14) SoBe's principal point of contact for employees, vendors, customers, banks, and regulatory agencies is through Pepsico in New York. (*Id.*)

According to plaintiffs, only a minimal amount of SoBe's marketing functions remained in Connecticut. (*Id*. ¶¶ 3, 4, 5.) Plaintiffs maintain that the senior operations manager in the Norwalk office, had "no supervision over the customer service, purchasing, product procurement, manufacturing, logistics or quality control functions" and provided only a "minimal level of support to the Operations function run out of New York." (*Id*.) Plaintiffs maintain that there is only one quality control position functioning out of the Norwalk office. (*Id*.) Plaintiffs maintain that at the time of Banker's departure, in September of 2003, there was only one staff level accountant working in Norwalk because most of the financial functions had been transferred to Pepsico in 2002. (*Id*.)

---

### B. Merits

According to defendants, the SoBe LTIP was designed to provide an incentive to key

5

employees by giving them a stake in the growth of SoBe. (Defs. Rule 56.1 Stmt. ¶ 13.) Defendants maintain that the meetings during which Banker presented the SoBe LTIP to plaintiffs took place in the Norwalk office, and that this written presentation is the only document that describes the terms of the plan. (*Id*. ¶¶ 15, 16.)

Plaintiffs deny that the SoBe LTIP was "truly intended to provide an incentive to key employees." (Pls. Rule 56.1 Stmt., Defs. Stmts. Denied ¶ 13.) Plaintiffs deny any knowledge of the meetings held in Norwalk, and also deny that the written presentation described by defendants is the only written description of the terms of the SoBe LTIP.[2] (*Id*. ¶¶ 15, 16.)

According to plaintiffs, senior management at Pepsico made several representations that after the acquisition SoBe would "run autonomously" and "remain an independent operating entity of Pepsi." (Pls. Rule 56.1 Stmt. ¶¶ 1, 3.) However, plaintiffs maintain that in reality "employees at Pepsi had decided prior to the date of the acquisition to immediately dismantle the operations of SoBe, LLC and merge the operations into the Pepsico organizational structure," and in about April of 2001 Pepsi management decided to fully integrate the operations of SoBe into Pepsico's operations. (*Id*. ¶¶ 2, 4.)

Plaintiffs further maintain that following the acquisition of SoBe, various key employees began to leave and did not pursue positions at Pepsico. (*Id*. ¶¶ 6, 8.) According to plaintiffs, as a result of this attrition they were encouraged to maintain their employment with SoBe. (*Id*. ¶ 9.) Plaintiffs state that they were provided assurances that SoBe would be "run autonomously and middle management would be provided with a stock incentive plan." (*Id*. ¶ 10.) Plaintiffs maintain

---

[2] According to plaintiffs the terms of the SoBe LTIP are also described in the Asset Purchase Agreement at page 10 § 2.5(b)(v) and in "numerous schedules annexed to the Asset Purchase Agreement." (*Id*. ¶ 16.)

that under the terms of the Asset Purchase Agreement, "Pepsi was obligated to create a [sic] LTIP that would provide for the payout of $11,000,000 over a five-year performance period commencing immediately after the closing date of the Asset Purchase Agreement to certain key employees of the company." (*Id*. ¶ 11.)

According to plaintiffs, following the acquisition, Pepsico management made numerous operational mistakes and decisions which resulted in a drop in profitability and substantial losses for 2001. (*Id*. ¶ 19.) Plaintiffs maintain that the LTIP was offered to them at this time, and was therefore of no value to them. (*Id*. ¶ 7.) Plaintiffs also maintain that in the fourth quarter of 2001, Pepsico began the absorption of SoBe's sales force, operations, finance and systems which resulted in the elimination of many of the SoBe positions that were intended to be benefitted by the LTIP, just three months after the formal presentation of the LTIP. (*Id*. ¶ 9.) According to plaintiffs, both of their positions were eliminated due to a system conversion that began around December of 2001. (*Id*.) Plaintiffs maintain that they both received favorable reviews and awards during their employment with SoBe. (*Id*. ¶ 10.)

## DISCUSSION

**I.    Standard on Motion to Dismiss Pursuant to Rule 12(b)(1)[3]**

Under FED. R. CIV. P. 12(b)(1), "a facially sufficient complaint may be dismissed for lack

---

[3] When presented with a Rule 12(b)(1) motion along with other motions to dismiss, the court must decide the Rule 12(b)(1) motion first. *See Rhulen Agency, Inc. v. Alabama Ins. Guaranty Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) ("where . . . the defendant moves for dismissal under Rule 12(b)(1), . . . , as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot") (internal citations and quotations omitted).

of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient." *Augienello v. Fed. Deposit Ins. Corp.,* 310 F. Supp. 2d 582, 587 (S.D.N.Y. 2004) (citing *Peterson v. Continental Airlines Inc.,* 970 F. Supp. 246 (S.D.N.Y. 1997)). "The party asserting subject matter jurisdiction has the burden of proving, by a preponderance of the evidence," that it exists. *Augienello*, 310 F. Supp. 2d at 587-88 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996); *Gallo v. United States*, 950 F. Supp. 1246, 1248 (S.D.N.Y. 1997) (citing *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 507 (2d Cir. 1994))).

When considering a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the court may properly refer to evidence beyond the pleadings to resolve disputed jurisdictional facts. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Accordingly, the court may decide whether subject matter jurisdiction exists "on the basis of affidavits or other evidence, and 'no presumptive truthfulness attaches to the complaint's jurisdictional allegations.'" *Augienello*, 310 F. Supp. 2d at 588 (citing *Guadagno v. Wallack Ader Levithan Assoc.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)); *accord Integrated Utils. Inc. v. United States*, No. 96 Civ. 8983, 1997 WL 529007, at *3 (S.D.N.Y. Aug. 26, 1997) ("Argumentative inferences favorable to the party asserting jurisdiction should not be drawn.").

II. **Diversity Jurisdiction**

Under 28 U.S.C. § 1332(a)(1), "[f]ederal district courts have original subject matter jurisdiction over civil actions where the amount in controversy exceeds $75,000 and the action is between citizens of different states." *Peters v. Timespan Comm., Inc.*, No. 97 Civ. 8750, 1999 WL 135231, at *3 (S.D.N.Y. Mar. 12, 1999). It is well-established that diversity jurisdiction under 28

8

U.S.C. § 1332 requires complete diversity between all plaintiffs and defendants in the action. *See Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373-74 (1978); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990). Therefore, the court lacks diversity jurisdiction "if any plaintiff is a citizen of the same state as any defendant." *Peters,* 1999 WL 135231, at *3. "Whether federal diversity jurisdiction exists is determined by examining the citizenship [of the parties] at the time the action is commenced."[4] *Krauth v. Executive Telecard, Ltd.,* 887 F. Supp. 641, 646 (S.D.N.Y. 1995) (quoting WRIGHT & MILLER § 3607)).

For purposes of diversity jurisdiction, 28 U.S.C. § 1332(c) provides that a corporation "is a citizen of any State by which it has been incorporated and of the State where it has its principal place of business . . . ." 28 U.S.C. § 1332(c).[5] The parties here do not dispute that SoBe is a citizen of Delaware, its state of incorporation. However, they do dispute the proper location of SoBe's principal place of business.

In the case at bar, defendants contend that plaintiffs' claims should be dismissed pursuant to Rule 12(b)(1) because plaintiffs are citizens of Connecticut and SoBe's principal place of business is also Connecticut, destroying diversity under 28 U.S.C. § 1332. (Defs. Mem. Supp. Mot. Dismiss at 1, 6.) Plaintiffs maintain that SoBe's principal place of business is New York. (Pls. Mem. Opp.

---

[4] The present action was commenced on November 7, 2003.

[5] In 1958 Congress amended 28 U.S.C. § 1332 to treat corporations as citizens of both their state of incorporation and the state in which their principal place of business is located because it "was considered unfair to permit a corporation to avoid trial in the court of a state where it transacts its principal business by means of a legal device not available to individual citizens." *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979) ("Since the underlying reason for diversity jurisdiction is to protect out-of-state litigants from assumed local prejudices, Congress could perceive no reason to open the federal forum to an essentially local enterprise.")

Mot. Dismiss at 8.)

The Second Circuit recognizes two different tests for determining the location of a corporation's principal place of business: (1) the "nerve center" test; and (2) the "public impact" or "place of operations" test. *See R.G. Barry Corp.*, 612 F.2d at 655; *see also Krauth*, 887 F. Supp. at 646. Which test should be applied in a particular case depends upon the structure and nature of the corporation. *Augienello*, 310 F. Supp. 2d at 590.

Where a corporation's activities are decentralized and spread across many different states, courts apply the "nerve center" test to determine a corporation's principal place of business. *Id*. Under the "nerve center" test, "courts focus on those factors that identify the place where the corporation's overall policy originates." *Id*. (citing *R.G. Barry Corp.*, 612 F.2d at 655; *Scot Typewriter Co. v. Underwood Corp.,* 170 F. Supp. 862, 865 (S.D.N.Y. 1959) (noting that when a corporation is involved in "far-flung . . . activities . . . carried out in different states, its principal place of business is the nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities . . . , in the furtherance of the corporate objective.")) (citations omitted). "In other words, the 'nerve center' test places the principal place of business at the location of a company's headquarters." *Peters*, 1999 WL 135231, at *6 (citing *Compucon Distrib. of New England, Inc. v. Cooper*, 685 F. Supp. 424, 425 (S.D.N.Y. 1988)). Plaintiffs contend that the "nerve center" test is the appropriate test to determine SoBe's citizenship. (Pls. Mem. Opp. Mot. Dismiss at 4.)

On the other hand, where a corporation is more centralized, courts apply the "place of operations" or "public impact" test to determine the corporation's principal place of business. *See Augienello*, 310 F. Supp. 2d at 591. Under this test, a corporation's principal place of business is

located in the state with which the corporation has its most extensive contacts with, or its greatest impact on the general public. *See R.G. Barry Corp.*, 612 F.2d at 655; *see also Krauth*, 887 F. Supp. at 647; *see also Ctr. for Radio Info., Inc. v. Herbst*, 876 F. Supp. 523, 525 (S.D.N.Y. 1995).

After careful consideration we conclude that the appropriate test to determine SoBe's principal place of business is the "public impact" test. At the time this action was commenced SoBe's offices were located in Norwalk, Connecticut, and they are still there. (Defs. Rule 56.1 Stmt. ¶ 2; Pls. Rule 56.1 Stmt., Defs. Stmts. Denied ¶ 2.) Therefore, although certain functions take may place outside of Connecticut, we are unable to conclude that SoBe's operations are "far-flung" or spread across numerous states, so that the "nerve center" test is appropriate.[6] *See Peters*, 1999 WL 135231, at *6 (holding that the "public impact" test was most applicable because the defendant had only two offices in two different states and was therefore a "centralized" as opposed to a "far-flung and varied" operation); *see also Compucon*, 685 F. Supp. at 425 (holding that application of the "nerve center" test was inappropriate because the corporation at issue conducted business from only two locations); *but see Augienello*, 310 F. Supp. 2d at 591 (holding that the "nerve center" test was applicable because the defendant corporation had eighteen offices in twelve different states). Applying the "public impact" test to the facts of this case, we determine that SoBe's principal place of business is Connecticut.

---

[6] We note that the "nerve center" test is frequently applied to large "parent corporations with subsidiaries scattered throughout several states." *Delande v. Fine*, 545 F. Supp. 268, 272 (S.D.N.Y. 1982) Accordingly, if we were charged here with determining Pepsico's principal place of business, the "nerve center" test would likely apply. However, the central issue here concerns the principal place of business of SoBe, not Pepsico and it "would be anomalous to suggest that a subsidiary's "center of gravity" is determined with reference to that of its parent, when it is the reverse analysis which is applied generally." *Id*.

We begin by reiterating that the burden of establishing subject matter jurisdiction rests upon the party seeking exercise of that jurisdiction, in this case plaintiffs. *See Delande*, 545 F. Supp. at 271 (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942)). Plaintiffs, however, have failed to submit any evidence to show that SoBe maintained any offices in New York or had any employees working in New York. To the contrary, plaintiffs acknowledge that SoBe's office is located in Norwalk, Connecticut (Pls. Rule 56.1 Stmt., Defs. Stmts. Denied ¶ 2), but then argue that because many of SoBe's business activities were taken over by Pepsico and conducted out of the various Pepsico New York locations, SoBe's principal place of business is New York, rather than Connecticut. (Pls. Mem. Opp. Mot. Dismiss at 2-8.) The only evidence plaintiffs provide to support their argument that diversity jurisdiction exists is the Declaration of plaintiff Roberts which contains a list of functions that, based on his personal knowledge as Controller of SoBe, he maintains were taken over by Pepsico following the acquisition.[7] (Roberts Decl. ¶¶ 32-36.) Defendants offer the following evidence in support of their position that subject matter jurisdiction does not exist: (1) a Declaration of Banker; and (2) a Declaration of Scott Moffitt, SoBe's current General Manager and former Vice President of Marketing (from January of 2003 through January of 2004).

Even if we accept plaintiffs' evidence as true, their argument fails because it ignores the fact that SoBe is a separately incorporated entity. As a general rule, "a separately incorporated entity is . . . considered to have its own principal place of business." *Powers v. Fox Television Stations, Inc.*, 907 F. Supp. 719, 722 (S.D.N.Y. 1995) (citing *Topp v. Compair, Inc.*, 814 F.2d 830 (1st Cir. 1987) (quoting 1 MOORE'S FEDERAL PRACTICE ¶ 0.77[1.-2], at 717.10 (2d ed. 1986))) (internal quotations

---

[7] It should be noted that the appropriate time for purposes of determining whether subject matter jurisdiction exists is November 7, 2003; however, Roberts left his employment at SoBe in October of 2002.

12

omitted); *see also Hungarian Broad. Corp. v. Coleman and Co. Secs., Inc.*, No. 96 Civ. 0048, No. 96 Civ. 0724, 1996 WL 374173, at *1 (S.D.N.Y. July 2, 1996) (noting that "in all but exceptional circumstances, the principal place of business of a corporation for purposes of 28 U.S.C. § 1332(c)(1) is determined without reference to the business of a parent corporation"). This remains true even where "the parent corporation exerts a high degree of control through ownership or otherwise." *Powers,* 907 F. Supp. at 723 (quoting *Topp*, 814 F.2d at 835) (internal quotations omitted); *see also Topp*, 814 F.2d at 836 (quoting *de Walker v. Pueblo Int'l, Inc.*, 569 F.2d 1169, 1173 (1st Cir. 1978) (noting that despite the fact that a parent corporation owns all of the capital stock of a subsidiary, and thus "'exerts its control both commercially and financially'" . . . "'the existence of the subsidiary as a distinct corporate entity is, . . . , in all respects observed'"). If this were not the general rule, "every independently incorporated, wholly owned subsidiary which is part of a large conglomerate would be treated (for diversity jurisdiction purposes) as a mere division of a large company rather than a separate corporation."[8] *Topp*, 814 F.2d at 835.

Our determination that Connecticut is SoBe's principal place of business also "comports with the stated purpose of diversity jurisdiction, which is to protect out-of-State citizens from the biases of local courts and juries." *Compucon*, 685 F. Supp. at 426-27. Because SoBe is a Connecticut employer with an office in Connecticut, Connecticut is the state in which SoBe would be least likely

---

[8] Plaintiffs' argument would require us to delve into "how many important decisions and functions of a subsidiary are controlled by that subsidiary, and how many were controlled by the parent corporation." *Topp*, 814 F.2d at 837. However, keeping in mind that the issue here is SoBe's principal place of business, and that SoBe is an independently incorporated entity, this is not an appropriate task for a federal court to undertake. *Id.* (noting that there is no discernable value "in having the federal district courts get mired down in the hopeless and unnecessary task of deciphering the internal power struggles going on between a parent corporation and its subsidiaries").

to suffer from local prejudice. *See R.G. Barry Corp.*, 612 F.2d at 656-57 (explaining that "because the defendant engaged in its most extensive contact with the public in New York, New York was the jurisdiction in which the defendant would be least likely to suffer from local prejudice, the historical, if not still viable, justification for diversity jurisdiction"); *see also Compucon*, 685 F. Supp. at 426-27 (noting that the result reached under the "place of operations" test comported with the stated purpose of diversity jurisdiction because the corporation was "likely to be welcome" and would not "face hostility . . . as a 'foreigner'" in that state) (citation omitted). Plaintiffs have submitted no proof to support their contention that SoBe would be considered more "local" in New York, than in Connecticut where its office and the majority of its employees are located.

With the above principles in mind, it is clear that the main thrust of plaintiffs' evidence is simply that Pepsico was exerting the control it had over the operations of SoBe, a subsidiary. However, as already discussed, the fact that a parent corporation exercises control which is necessarily incident to the full ownership of its subsidiary is insufficient to justify ignoring their separate corporate entities. *See Powers,* 907 F. Supp. at 723; *see also Topp,* 814 F.2d at 837.

Viewing the totality of the evidentiary record we are unable to conclude that plaintiffs have carried their burden of showing by competent proof that this Court has diversity jurisdiction. Accordingly, defendants' motion to dismiss is granted, and we need not consider defendants' remaining argument with respect to the amount in controversy, nor defendants' alternative motion for summary judgment herein.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the Complaint for lack of subject matter jurisdiction is granted.

SO ORDERED

Dated: White Plains, New York
May 6, 2005

_____
Sr. United States District Judge